1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    TENIAH TERCERO,                          No.  2:24-cv-02228-DC-JDP

12                    Plaintiff,

13         v.                                   ORDER GRANTING PLAINTIFF'S MOTION
                                                TO REMAND AND REMANDING THIS
14    C&S LOGISTICS OF                          ACTION TO THE SACRAMENTO COUNTY
      SACRAMENTO/TRACY LLC, et al.,             SUPERIOR COURT
15
                                                (Doc. No. 10)
16                    Defendants.

17         This matter is before the court on Plaintiff Teniah Tercero's motion to remand this action

18   to the Sacramento County Superior Court. (Doc. No. 10.) The pending motion was taken under

19   submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No. 16.) For the

20   reasons explained below, the court will grant Plaintiff's motion.

21                                         **BACKGROUND**

22         Defendants C&S Wholesale Grocers, LLC, and C&S Logistics of Sacramento/Tracy LLC

23   ("Defendants") employed Plaintiff from July 2021 through August 2022, as an hourly non-

24   exempt employee in California. (Doc. Nos. 1 at ¶ 9; 1-1 at ¶¶ 8, 13.) On July 1, 2024, Plaintiff

25   filed this representative action under California's Private Attorneys General Act, California Labor

26   Code §§ 2698, *et seq*., ("PAGA"), on behalf of herself and all other aggrieved employees, in the

27   Sacramento County Superior Court. (Doc. No. 1 at ¶ 1.) In her complaint, Plaintiff raises a single

28   cause of action against Defendants for violation of PAGA, predicated on Defendants' alleged

                                                 1

violation of California's wage and hour laws, including:

> (1) failure to pay for all hours worked, including minimum, straight time, and overtime wages; (2) failure to provide meal periods; (3) failure to authorize and permit rest breaks; (4) failure to pay all earned wages twice per month; (5) failure to maintain accurate records of hours worked and meal periods; (6) failure to timely pay all wages at termination; (7) failure to furnish accurate itemized wage statements; (8) failure to indemnify for necessary expenditures; and (9) failure to produce requested employment records.

(Doc. No. 1-1 at ¶¶ 15–53.)

Defendants timely removed this action to federal court from the Sacramento County Superior Court on August 16, 2024. (Doc. No. 1.) In their notice of removal, Defendants assert this court has original jurisdiction over this action pursuant to both diversity and federal question jurisdiction. (*Id*.) As to the latter, Defendants argue Plaintiff's allegations that they violated California's wage and hour laws—the predicate for Plaintiff's PAGA claim—are preempted under the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). (*Id*.) In support of removal, Defendants concurrently filed collective bargaining agreements between General Teamsters Local #150 ("the Union") and Defendants ("the CBAs"). (Doc. No. 3.)

Plaintiff filed the pending motion to remand this action back to Sacramento County Superior Court on September 16, 2024. (Doc. No. 10.) Defendants filed an opposition to Plaintiff's motion to remand on September 30, 2024. (Doc. No. 15.) Plaintiff then filed a reply and a request for judicial notice in support of her motion on October 10, 2024. (Doc. Nos. 17–18.)[1]

## LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal district court has jurisdiction

---

[1] Plaintiff requests the court take judicial notice of eight class actions that were remanded to California state court. (Doc. No. 24.) The eight remand orders appear to be largely based on unreasonable estimates of labor code violation rates. (*See generally id*.) Because the court finds remand of this action appropriate on other grounds, the court need not address Plaintiff's request for judicial notice.

over a civil action removed from state court only if the action could have been brought in the federal court originally. 28 U.S.C. § 1441(a); *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress.").

Federal courts possess diversity jurisdiction over all civil actions between citizens of different states in which the alleged amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The amount in controversy includes "all relief claimed at the time of removal to which the plaintiff would be entitled if [they] prevail," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018), which may include "damages (compensatory, punitive, or otherwise) . . . as well as attorneys' fees under fee shifting statutes." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016). "A removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). However, if a plaintiff then contests the allegations in the notice of removal, both sides may "submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 82 (2014); *see also Johnson v. Wal-Mart Assocs. Inc.*, No. 22-cv-07425-MWF-MRW, 2023 WL 2713988, at *4 (C.D. Cal. Mar. 30, 2023) (finding the standards set forth in *Dart* and subsequent cases in this circuit are not limited to Class Action Fairness Act removals).

A plaintiff may challenge the allegations in the notice of removal in two ways. First, a plaintiff may bring a "facial attack" which "accepts the truth of the . . . allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2014) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). When a plaintiff mounts a facial attack, the court resolves it in much the same way as a motion to dismiss—by accepting the allegations as true, drawing all reasonable inferences in the defendant's favor, and determining whether the allegations are sufficient to invoke the court's jurisdiction. *Id.* Alternatively, a plaintiff may bring a "factual attack," which "contests the truth of

3

1   the . . . factual allegations, usually by introducing evidence outside the pleadings." *Id*. When a

2   plaintiff brings a factual attack, the defendant must support its allegations with "competent proof"

3   under the same evidentiary standard that governs in the summary judgment context. *Id*.

4        Federal courts also have original jurisdiction of all civil actions arising under the

5   Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 1331. For an action to be

6   removed based on federal questions these civil actions raise, the complaint must establish either

7   that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends

8   on the resolution of substantial questions of federal law. *Franchise Tax Bd. State of Cal. v.*

9   *Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10–13 (1983).

10        Ultimately, the party invoking removal bears the burden of establishing that removal was

11   proper. *Hamsen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (citing *Geographic*

12   *Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1101, 1107 (9th Cir. 2010)); *see*

13   *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (1992) ("The 'strong presumption' against removal

14   jurisdiction means that the defendant always has the burden of establishing that removal is

15   proper.") (citations omitted). The removal statutes are to be strictly construed, and any doubt as to

16   the right of removal must be resolved in favor of remanding to state court. *Durham v. Lockheed*

17   *Martin Corp.,* 445 F.3d 1247, 1252 (9th Cir. 2006); *Matheson v. Progressive Specialty Ins. Co*.,

18   319 F.3d 1089, 1090 (9th Cir. 2003) (citing *Gaus*, 980 F.2d at 566). "If at any time before final

19   judgment it appears that the district court lacks subject matter jurisdiction [over the removed

20   action], the case shall be remanded." 28 U.S.C. § 1447(c).

21        **ANALYSIS**

22        Plaintiff avers removal was improper because Defendants have failed to demonstrate

23   Plaintiff's PAGA claim satisfies the amount in controversy requirement for diversity jurisdiction

24   or that Plaintiff's claim is preempted under the LMRA. (Doc. No. 10.) The court addresses each

25   argument in turn.

26   **A.   Diversity Jurisdiction**

27        With regard to diversity jurisdiction, the parties do not dispute that they have diversity of

28   citizenship; rather, the parties dispute only whether the amount in controversy exceeds $75,000.

(Doc. Nos. 10; 15 at 8 n.1.) In their notice of removal, Defendants estimate the amount in controversy includes $36,325.00 for Plaintiff's individual PAGA penalties and $75,000.00 in attorneys' fees. (Doc. No. 1 at ¶¶ 58–60.)[2] Defendants assert "it is 'more likely than not' that Plaintiff will collectively be seeking an attorneys' fees award based on a lodestar of at least 150 hours at not less than $500 per hour—i.e., at least $75,000—if this case is litigated through trial and to a judgment in Plaintiff's favor on her individual PAGA claims." (*Id.* at ¶ 60.)

Attorneys' fees may be included in the amount in controversy when they are available pursuant to a statute or statutes underlying the plaintiff's claims. *Shoner v. Carrier Corp.*, 30 F. 4th 1144, 1148 (9th Cir. 2022) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)). "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). However, district courts may exclude future fees if they are too speculative or if the defendant fails to show with a "reasonable probability that the amount in controversy exceeds the minimum." *Fritsch*, 899 F.3d at 795. Under PAGA, "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g)(1). Accordingly, the court will consider attorneys' fees when assessing the amount in controversy for this PAGA action.

Defendants assert they proffered a reasonable estimate of Plaintiff's attorneys' fees for prosecuting her individual PAGA claim, and Plaintiff did not allege that Defendants' estimate of attorneys' fees is inaccurate. (Doc. No. 15 at 18.) Defendants argue because Plaintiff has not disputed that Defendants' estimated hours or hourly rates were reasonable assumptions, Plaintiff raises only a facial attack and its "allegations must be accepted as true." (*Id.* at 18–19) (citing *Oddei v. Optum, Inc.*, No. 2:21-cv-03974-SB-MRW, 2021 WL 3013914, at *3 (C.D. Cal. Jul. 15,

---

[2] Following the United States Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), actions under PAGA are properly understood as a combination of two claims: "individual PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff" and "representative . . . PAGA claims arising out of events involving other employees." *Viking River*, 596 U.S. at 648–49.

1    2021)).

2         The court finds Defendants' argument unpersuasive. Although Plaintiff had not introduced

3    evidence outside the pleadings in her motion to remand, she expressly questioned the

4    reasonableness of Defendants' assumption when calculating her counsels' attorneys' fees.

5    Plaintiff challenged Defendants' alleged violation rates and asserted Defendants' attorneys' fees

6    assumption is "[f]lawed and [i]mproper" and that the calculation of the amount in controversy

7    was "bloated" because it includes fees for Plaintiff's representative claim. (Doc. No. 10 at 13–

8    14.) Notably, in response to this attack, Defendants provided a declaration from defense counsel

9    Matthew C. Kane regarding his estimate of Plaintiff's attorneys' fees for Plaintiff's individual

10   claim. (Doc. No. 15-1 at ¶¶ 4–6.) Thus, it appears Defendants have construed Plaintiff's response

11   as a factual attack. Likewise, having considered the parties' submissions, the court construes

12   Plaintiff's challenge to Defendants' notice of removal as a factual attack.

13        Because this is a factual attack, Defendants bear the burden of establishing, by a

14   preponderance of the evidence, that the amount in controversy exceeds the jurisdictional

15   threshold. In Attorney Kane's declaration, he reported he has significant experience litigating

16   wage and hour actions in California. (Doc. No. 15-1 at ¶ 2.) Based on his experience, Attorney

17   Kane declares that a conservative amount of time expended to complete litigation tasks in

18   individual actions is at least 35 hours to conduct written discovery and related motions, 20 hours

19   for non-expert depositions, 5 hours for expert witness discovery and depositions, and 40 hours for

20   non-discovery motion practice, including dispositive motions. (Doc. No. 15-1 at ¶¶ 4–6.)

21   Attorney Kane also declared it will take Plaintiff's counsel at least 40 hours for trial preparation

22   and attendance and 10 hours for post-trial motions. (*Id*. at ¶ 5.) Attorney Kane then concluded

23   Plaintiff's counsel would spend at least 150 hours litigating Plaintiff's individual claims. (*Id*. at ¶

24   6.) Defendants assert Attorney Kane's estimate is reasonable for Plaintiff's individual PAGA

25   claim and is "exceedingly conservative" as compared to similar individual wage and hour cases.

26   (Doc. No. 15 at 19.)

27        The court finds Attorney Kane's declaration insufficient to support Defendants' attorneys'

28   fees estimate for the following reasons. First, Attorney Kane's declaration does not mention, let

6

alone support, Defendants' assumption that Plaintiff's counsel will bill at $500 an hour. Generally, a removing party will provide evidentiary support, such as fee petitions submitted in similar cases, to substantiate plaintiff's counsel's hourly rate. *See Martinez v. Ford Motor Co.*, No. 1:18-cv-01607-LIO-JLT, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (including attorneys' fees in the amount in controversy where defendant submitted "five petitions for attorneys' fees filed in other similar cases by the same counsel who represent Plaintiffs here"); *see also Ott v. Cooper Interconnect, Inc. A Corp.*, No. 2:23-cv-04501-SPG-JC, 2023 WL 5530028, at *3 (C.D. Cal. Aug. 25, 2023) (including attorneys' fees in the amount in controversy where defendants "point to two other wage and hour cases involving Plaintiff's counsel . . . with average rates of $525 and $650 per hour."); *see also Evers v. La-Z-Boy Inc.*, No. 21-cv-02100-LL-BLM, Doc. No. 13-2 (C.D. Cal. Jul. 27, 2022) (including attorneys' fees in the amount in controversy where defendants identify multiple cases detailing opposing counsel's hourly rate). Defendants' assumption that Plaintiff's counsel will bill at least $500 an hour for all work performed on Plaintiff's individual PAGA claim is conjecture, which the court cannot use to determine the reasonableness of Defendants' fee estimate. Thus, the court finds Defendants' assumption that Plaintiff's counsel will charge "not less than $500 per hour" unsupported by the evidence.

Second, Attorney Kane's declaration does not demonstrate why his estimate that it would take at least 150 hours to litigate Plaintiff's individual PAGA claim is reasonable. Attorney Kane relies solely on his experience litigating wage and hour claims and he "does not explain what 'specific factors present in this case' lead him to make [his] estimates." *Elias v. Integon Preferred Ins. Co.*, No. 24-cv-01981-WLH-RAO, 2024 WL 2732228, at *2 (C.D. Cal. May 28, 2024). Again, Attorney Kane's declaration also lacks the evidentiary support, such as fee petitions submitted in similar cases, that typically supports the inclusion of attorneys' fees in the amount in controversy calculation. *Newsome v. FCA USA LLC*, No. 20-cv-01189-JLT-BAK, 2022 WL 408631, at *6 (E.D. Cal. Feb. 10, 2022); *see Gomez v. Old Dominion Freight Line Inc.*, No. 23-cv-02212-HDV-SHK, Doc. No. 13-2 (C.D. Cal. Jan. 4, 2024) (defendant's counsel filed a declaration and attached fee petitions in support of the inclusion of attorneys' fees in the amount

1  in controversy calculation); *see also Lippold v. Godiva Chocolatier, Inc.*, No. 10-cv-00421-SI,

2  2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) (defendants' counsel attached settlement

3  agreements of wage and hour lawsuits in support of their estimate of attorneys' fees in the amount

4  in controversy calculation).

5        Additionally, Defendants' attorneys' fees estimates are flawed because they fail to

6  account for the impact of Plaintiff's representative PAGA claim. Defendants assert their

7  attorneys' fees calculation is based solely on Plaintiff's individual PAGA claim. (Doc. No. 15 at

8  19.) However, Attorney Kane's estimate includes legal work that will inevitably involve

9  Plaintiff's representative claim, including discovery, pretrial motions, trial, and post-trial motions.

10  (Doc. 15-1 at ¶¶ 4-5); *C.f. Rodriguez v. Goodrich Corp.*, No. 14-cv-01026-JAM-AC, 2014 WL

11  3842904, at *4 (E.D. Cal. Aug. 1, 2014) (defendants' attorneys' fees estimates were not based

12  solely on fees applicable to plaintiff because they include pretrial activities that "would be

13  conducted on behalf of the entire putative class, not merely Plaintiff as an individual.").

14        Taking all these points into account, Defendants have not established by a preponderance

15  of the evidence that Plaintiff's attorneys' fees will amount to $75,000. For this reason, the court

16  will not credit Defendants' estimate of attorneys' fees in calculating the amount in controversy.

17  Consequently, because the estimated amounts for Plaintiff's individual PAGA penalties do not

18  exceed the $75,000 jurisdictional threshold on their own, even if this court were to accept all of

19  the remaining estimates as true, Defendants would still fail to meet their burden. Accordingly, the

20  court finds that Defendants have not proven by a preponderance of the evidence that the $75,000

21  amount in controversy threshold is satisfied and has therefore failed to establish diversity

22  jurisdiction.

23  **B.      Preemption Under the LMRA**

24        Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal

25  question is present on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v.*

26  *Williams*, 482 U.S. 386, 392 (1987). However, "[a] corollary to the well-pleaded complaint rule is

27  the 'complete preemption' doctrine, which applies in cases in which 'the preemptive force of a

28  statute is so extraordinary that it converts an ordinary state-common law complaint into one

stating a federal claim for purposes of the well-pleaded complaint rule.'" *In re NOS Commc'ns, MDL No. 1357*, 495 F.3d 1052, 1057 (9th Cir. 2007) (quoting *Caterpillar*, 482 U.S. at 393). Section 301 of the LMRA is one such extraordinary preemptive force. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2018) (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)).

Congress enacted the LMRA to "promote the full flow of commerce" by providing "orderly and peaceful procedures for preventing [] interferences by [employees or employers] with the legitimate rights of the other." *Columbia Export Terminal, LLC v. Int'l Longshore and Warehouse Union*, 23 F.4th 836, 840–41 (9th Cir. 2022) (quoting 29 U.S.C. §141(b)). Under § 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States." 29 U.S.C. § 185(a); *see McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1009 (9th Cir. 2018) (Section 301 of the LMRA "vests federal courts with jurisdiction" to hear suits between an employer and labor organization "without respect to the amount in controversy or without regard to the citizenship of the parties.") (citing 29 U.S.C. § 185(a)).

On its face, § 301 reads as a jurisdictional statute, and "contains no express language of pre-emption." *Curtis*, 913 F.3d at 1151. However, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts. *Id.* (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) and *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962)). Thus, preemption by the LMRA may arise in cases where a plaintiff files a complaint asserting state law claims, but their employment was governed by a collective bargaining agreement.

The preemptive power of § 301 of the LMRA is not limitless. Section 301 may not be read so broadly as to "pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Curtis*, 913 F.3d at 1152 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If a "claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to [a collective bargaining agreement] in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001). Likewise, if a contract cannot waive or alter a state law, and if the rights of the state law can be enforced without

consideration of the contract's terms, § 301 preemption does not apply. *Miller v. AT & T Network Sys.*, 850 F.2d 543, 546 (9th Cir. 1988); *see Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) ("Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'").

To determine if § 301 preemption applies, courts look to the Ninth Circuit's two-step analysis articulated in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007). *Curtis*, 913 F.3d at 1152. First, if the asserted cause of action involves a "right [that] exists solely as a result of the [collective bargaining agreement]," then the claim is preempted, and the analysis ends without proceeding to step two. *Id.* (quoting *Kobold*, 832 F.3d at 1032; *Burnside*, 491 F.3d at 1059).

If not, the court proceeds to the second step and asks whether a plaintiff's state law right is nevertheless "substantially dependent" on analysis of the collective bargaining agreement. *Burnside*, 491 F.3d at 1059. This second step "turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the [collective bargaining agreement]." *Curtis*, 913 F.3d at 1153 (citing *Kobold*, 832 F.3d at 1033). Interpretation is construed narrowly in this context, it means something more than consider, refer to, or apply. *Id.*; *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000). Accordingly, at the second step of LMRA § 301 preemption analysis, claims are only preempted to the extent there is an active dispute over "the meaning of contract terms." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (citing *Livadas*, 512 U.S. at 124).

Plaintiff asserts LMRA preemption does not apply in this case because her complaint makes no reference to a collective bargaining agreement or its terms. (Doc. No. 10 at 17.) The court finds Plaintiff's argument unpersuasive. As discussed above, the Ninth Circuit has expressly found that "§ 301 has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Curtis*, 913 F.3d at 1152 (citation omitted). Plaintiff's omission of the CBAs between Defendants and the Union in her complaint does not allow her necessarily to avoid

1  preemption under § 301.

2         Defendants do not argue that Plaintiff's allegations involve a right existing solely as a

3  result of the CBAs. Instead, Defendants contend Plaintiff's allegations of "overtime and meal and

4  rest break violations—and the derivative [allegations] based thereon" directly implicate the CBAs

5  and interpretation of the CBAs are essential to the resolution of Plaintiff's PAGA claim. (Doc.

6  Nos. 1 at ¶ 71; 15 at 21.) Thus, the court will not analyze Plaintiff's allegations under step one of

7  *Burnside*.

8         As to step two of *Burnside*, Plaintiff asserts Defendants have not offered any evidence of a

9  dispute as to any of the CBAs' terms, and at most the court will need to reference the agreements

10  to adjudicate her claim. (Doc. No. 10 at 17–18.) In opposition, Defendants aver the CBAs have

11  "not specifically define[d] which wages are encompassed in the [regular rate or] 'straight-time

12  rate.'" (Doc. No. 15 at 21.) Defendants analogize this case to *McKinley v. Southwest Airlines Co.*

13  and conclude "to determine what comprises the regular rate of pay and whether [Defendants]

14  properly calculated it, the [c]ourt will have to 'examine each form of pay provided by the

15  [CBAs], determine when that pay was due, and then decide whether the pay should have been

16  included in Plaintiff's regular rate.'" *Id.* (citing *McKinley v. Sw. Airlines Co.*, No. 2:15-cv-02939-

17  AB-JPR, 2015 WL 2431644, at *6 (C.D. Cal. May 19, 2015), *aff'd*, 680 F. App'x 522 (9th Cir.

18  2017)).

19         The court finds Defendants' reliance on *McKinley* unpersuasive. In *McKinley*, the parties

20  disputed the method for calculating the regular rate of pay. 2015 WL 2431644, at *5–8 ("The

21  Court would have to interpret the CBA to determine whether the types of remuneration Plaintiff

22  identifies fall into [the Fair Labor Standards Act's] exceptions."); *see also Firestone v. S. Cal.*

23  *Gas Co.*, 219 F.3d 1063, 1056–66 (9th Cir. 2000) (the parties disputed the method for calculating

24  the regular rate); *Raphael v. Tesoro Ref. Mktg. Co., LLC*, No. 2:15-cv-02862-ODW-E, 2015 WL

25  3970293, at *6 (C.D. Cal. Jun. 30, 2015) (same). In contrast, Defendants have not identified any

26  active dispute between the parties for calculating the regular rate or straight-time rate of pay.

27  Instead, the parties do not dispute that the regular rate will be determined by analyzing the

28  different pay rates and applying those distinctions. (Doc. Nos. 15 at 21–22; 17 at 11.)

1    In *McKinley*, the court also held that the interpretation of the CBA was necessary because

2    the plaintiff's claims involved "many different provisions" and "[i]n order to assess [the]

3    Plaintiff's claim, the Court would have to examine the interaction of those provisions." 2015 WL

4    2431644, at *8. Analogizing to *McKinley*, Defendants suggest that here too the CBAs' provisions

5    could affect an employee's straight-time rate and the court will be required to search the

6    agreements to determine an employee's wages. (Doc. No. 15 at 22.) Defendants also point to a

7    provision concerning premium rates for lead work and performance for employees with perfect

8    attendance that could affect an employee's straight-time rate. (*Id.*) (citing Doc. No. 3 at 30, 71–

9    72.) But Defendants offer no analysis on why the court would be required to interpret the CBAs,

10   as opposed to refer to them. Defendants fail to identify any terms or issues that would complicate

11   the court's determination of the applicable regular or straight-time rate. *C.f. Raphael*, 2015 WL

12   3970293, at *6 (the defendant "describe[d] the complexity involved in calculating the proper

13   wage and premium rates under only a single [collective bargaining agreement], *highlighting*

14   *essential terms* that…need[ed] to be interpreted.") (emphasis added); *see also Wilson-Davis v.*

15   *SSP Am., Inc.*, 434 F. Supp. 3d 806, 813 (C.D. Cal. 2020) ("It is not enough for Defendants to

16   provide a laundry list of provisions that they allege the court must interpret to resolve Plaintiff's

17   claims; Defendants must explain why interpretation, as opposed to mere reference to the

18   [collective bargaining agreement] is necessary.").

19   Defendants appear to conflate the need to interpret the CBAs' provisions with the need to

20   simply apply those provisions. To the extent the Court must look to a provision from the CBAs to

21   calculate the straight-time rate, their application requires nothing more than simple math.

22   Accordingly, the court finds Plaintiff's allegations of overtime and meal and rest break

23   violations—and the derivative allegations based thereon—do not depend substantially on

24   interpretation of the CBAs, and consequently are not preempted.

25   Thus, Plaintiff's motion to remand this action based on a lack of diversity jurisdiction and

26   federal question jurisdiction will be granted.

27   ///

28   ///

**CONCLUSION**

For the reasons explained above:

1.  Plaintiff's motion to remand this action (Doc. No. 10) is granted;

2.  This action is remanded to the Sacramento County Superior Court for all further proceedings; and

3.  The Clerk of the Court is directed to close this case.


IT IS SO ORDERED.

Dated:   **November 15, 2024**
_____
Dena Coggins
United States District Judge

13